UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| WRAY L. FURGASON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) No. 1:12-cv-00738-MJD-RLY |
| | ) |
| JAMES FURRER, | ) |
| PROTEUS PROS, LLC, | ) |
| | ) |
| Defendants. | ) |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

The Court began a bench trial in this action on January 27, 2014, which, when Plaintiff Wray Furgason fell ill, was continued to April 24, 2014. Plaintiffs Wray Furgason and Michael Wharton were present in person and by counsel Robert Kondras. Defendants James Furrer and Proteus Pros, LLC d/b/a Mr. Handyman ("Mr. Handyman") were present in person, by Defendant Furrer, and by counsel Steven Sams.

Plaintiffs brought their individual actions against the Defendants to recover unpaid overtime compensation and statutory damages pursuant to the Fair Labor Standards Act (FLSA) and the Indiana Minimum Wage Law (IMWL). [*See* Dkt. 1; No. 1:11-cv-01222-TWP-DKL Dkt. 1.] The Court, in response to cross motions for summary judgment in Plaintiff Furgason's case, ruled that (1) the IMWL, and not the FLSA, apply to Plaintiff Furgason's claims, (2) the Court retains supplemental jurisdiction over the IMWL claims, (3) Plaintiff Furgason at no point waived his right to sue Defendants pursuant to the IMWL, and (4) Plaintiff Furgason was not paid the overtime due to him under the IMWL on at least one work week. [Dkt. 54.] In January of 2014, the Court severed Plaintiff Wharton's wage claim from his other claims, consolidating said claim with Plaintiff Furgason's wage claim. [Dkt. 59.] All parties then consented to the jurisdiction of the Magistrate Judge for the purposes of conducting a bench trial on the remaining issues of the matter, namely the extent of damages owed to the Plaintiffs pursuant to the

IMWL. [Dkt. 63.] Having heard testimony and considered the exhibits and arguments of counsel, the Court makes the following Findings of Fact and Conclusions of Law[1] pursuant to Federal Rule of Civil Procedure 52.

## I. Findings of Fact

Mr. Handyman is a home repair business headquartered in Indianapolis, Indiana. Defendant Furrer is the owner, sole member, and sole manager of Proteus Pros, LLC, doing business as Mr. Handyman. As such, Defendant Furrer makes all the employment decisions, determines all employees' hours and wages, and has operational control over his business.

Plaintiff Furgason worked as a "technician" (handyman) for Mr. Handyman from February 28, 2011 through January 27, 2012. From February 28, 2011 through October 29, 2011 Plaintiff Furgason was paid a "salary" of $700 per week, regardless of the number of hours he worked. Plaintiff Wharton also worked as a technician for Mr. Handyman during this time period, from April 10, 2011 through August 4, 2011, and was paid the same "salary." In exchange for this "salary," Plaintiff Furgason and Defendant Furrer testified that it was an understood expectation that each technician would average a 45-hour work week.

Defendant Furrer does not contest the finding of liability against him made in the District Judge's Order granting partial summary judgment. It was not until Plaintiff Wharton filed his lawsuit in the fall of 2011 that Mr. Furrer knew that his technicians were not exempt from receiving overtime pay when they worked more than 40 hours in one week. Accordingly, on October 30, 2011, Mr. Furrer began paying his technicians, including Plaintiff Furgason, $15 per hour for up to 40 hours per week and then $22.50 per hour of overtime. Prior to October 29, 2011, however, Defendant Furrer did not have a timekeeping method that tracked each hour worked by his technicians.

---

[1] Any finding of fact that is more properly considered a conclusion of law is adopted as such. Similarly, any conclusion of law that is more properly considered a finding of fact is so adopted.

Plaintiff Furgason testified that, on a typical day from February 28, 2011 through October 29, 2011, he received a call from Mr. Furrer at 6:30 am to receive his assignment(s) for the day, which call lasted from twenty to thirty minutes. He then, as needed, was required to get certain fuel for the take-home work truck, which fuel was located fifteen minutes from where he lives, and was not always on the way to the first site, at which he had to arrive by 7:45 a.m. Throughout his time working for Mr. Handyman, Plaintiff Furgason worked at sites located throughout Hamilton, Boone, Johnson, and Marion Counties in Indiana. Mr. Handyman also required the technicians to buy supplies from certain stores, which were not always conveniently located, and to take debris to a dumpster that was located near Zionsville, Indiana. Generally, there were two assignments each day, with the first lasting from 8:00 a.m. through 12:00 p.m. and the second from 1:00 p.m. through 5:00 p.m. Although Mr. Furrer permitted his technicians to take a lunch break, Plaintiff Furgason testified that he was often on the road during that hour, having to clean out the truck and buy more supplies, when necessary. After leaving the last work site, Plaintiff Furgason was required to deliver the billing records to the Mr. Handyman office in Washington Township, Marion County, Indiana before returning home each Monday, Wednesday, and Friday. On average, Plaintiff Furgason testified that he did not arrive home until 6:00 p.m. or later.

Plaintiff Wharton then testified that his experience as a full-time technician for Mr. Handyman from April 10, 2011 through July 23, 2011 was quite similar to that of Plaintiff Furgason. As a technician for Mr. Handyman, Plaintiff Wharton worked as a handyman (fixed siding, re-caulked showers, repaired windows, etc.) and also performed preparatory and administrative functions (fueled the truck, submitted paperwork, picked up materials, etc.). Plaintiff Wharton testified that he received a call from Mr. Furrer every morning between 6:00 a.m. and 7:00 a.m. that lasted from five to fifteen minutes. Plaintiff Wharton also serviced homes located in Boone, Montgomery, Hamilton, Hendricks, and Marion Counties in Indiana during his time at Mr. Handyman, with the same two-assignment workday as described by Plaintiff Furgason. In sum, Plaintiff Wharton testified that he usually began his workday around 7:00 a.m. and ended his workday at about 6:00 p.m., for an average of 55 hours per week.

In support of these claims, Plaintiffs presented a sampling of GPS records as evidence of their 55-hour work weeks, emphasizing Plaintiff Furgason's GPS records from the week of June 19, 2011 through June 25, 2011 when he worked "at least 54 hours and 37 minutes." [*See.* Dkt. 75-1 at 3-4.] However, the GPS records do not tell the whole story, as Mr. Furrer did not have the GPS systems installed in the trucks until June of 2011, and the GPS records do not include any time not on the road, such as organizing and cleaning the trucks or receiving their assignments from Mr. Furrer over the phone. On cross examination, Defendants pointed out that there were several days where it seemed that Plaintiff Furgason was parked at home throughout the day, but Plaintiff Furgason testified that one assignment was at a house down the street from his own, and Mr. Furrer did not present any billing records or other evidence to contradict that testimony. Additionally, Defendants made similar observations during cross examination of Plaintiff Wharton for days at the end of July 2011, but Plaintiff Wharton was injured on the job on about July 19, 2011 and is only claiming damages through the pay period ending July 23, 2011.

Defendant Furrer then testified in his defense and in defense of Mr. Handyman. Mr. Furrer confirmed that he hired Plaintiffs Furgason and Wharton as "salaried" employees at $700 per week for 45 hours of work each week, with no overtime pay. On cross examination, Mr. Furrer could not present a "traditional timecard" to represent when his technicians' workdays began and ended prior to October 30, 2011. Nor did Mr. Furrer present the telephone records to confirm the times or lengths of his morning calls or any evening calls, even though he testified that Plaintiffs were supposed to call him upon leaving the last site of the day. Mr. Furrer presented billing records as evidence of Plaintiffs' hours worked, but he admitted that such records do not reflect any time Plaintiffs performed work-related activities off the work site premises.

## II. Credibility Determination

The Court recognizes that some of the foregoing findings are based on controverted evidence. The Court accepts the testimony of both Plaintiff Furgason and Plaintiff Wharton to the extent that their testimony is in agreement. However, the Court does not accept Plaintiff Furgason's claim that the

morning call from Mr. Furrer lasted twenty to thirty minutes when Plaintiff Wharton testified that the morning call only lasted five to fifteen minutes. On this issue, the Court finds Plaintiff Wharton's testimony credible, and a morning call lasting ten minutes on average will be factored into the Court's final calculation of damages.

Likewise, it appears that Plaintiff Wharton may have believed that the $700 per week "salary" was only intended to compensate for 40 hours per week and not 45. [*See* No. 1:11-cv-01222-TWP-DKL Dkt. 1 at 2.] This is significant because five hours of uncompensated overtime work at the regular rate of $17.50 ($700/40 hours) would be calculated at $26.25 per hour, while five hours of work paid only at the regular rate of $15.56 ($700/45 hours) instead of the overtime rate of $23.33 would be calculated at the difference, $7.77 per hour. Both Plaintiff Furgason and Mr. Furrer testified that the "salary" was intended to compensate for 45 hours of work per week, and this consensus is presented in Plaintiffs' proposed Findings of Fact and Conclusions of Law. [Dkt. 75-1.] Therefore, the Court finds that the $700 per week "salary" was intended for a 45 hour work week, and the regular rate of pay will be calculated at $15.56 per hour, with overtime pay calculated at $23.33 per hour, and the hours worked between 40 and 45 hours per week will be calculated at the difference of $7.77 per hour.

Finally, the Court finds Defendant Furrer's statements, when pressed, were generally credible, but does not give credit to his presentation of the evidence. Defendants' mischaracterization of billing records as "Labor Records" is evident in Mr. Furrer's own testimony that the billing records do not include any work related activities performed away from a work site, such as receiving assignment calls, cleaning and fueling the trucks, purchasing supplies, disposing of debris, submitting paperwork, and travel time to and from such necessary destinations. Defendants also mischaracterized Plaintiff Furgason's Severance Agreement and General Release at a "settlement agreement" at trial in an attempt to receive a credit for the $1800 Severance Payment made in 2012. The District Judge already decided in his entry of partial summary judgment that a plaintiff cannot waive his IMWL claim by signing such a document, and Plaintiff Furgason's claims are not so precluded in this matter. Additionally, the Agreement lists eighteen other causes of action and includes two catch-all provisions, meaning that

5

dozens of possible claims are potentially waived by a signatory of the Agreement. Therefore, the $1800 Severance Payment does not pertain to the claim at issue here and will not be considered in the Court's calculations.

### III. Conclusions of Law

The Indiana Minimum Wage Law states that "no employer shall employ any employee for a work week longer than forty (40) hours unless the employee receives compensation for employment in excess of the hours above specified at a rate not less than one and one-half (1.5) times the regular rate at which the employee is employed." Ind. Code 22-2-2-4(k). Further, an "employer" is defined as "**any individual**, partnership, association, **limited liability company**, corporation, business trust, the state, or other governmental agency or political subdivision during any work week in which they **have two (2) or more employees**."[2] *Id.* at 22-2-2-3 (emphasis added). Defendants do not dispute that they were in violation of section 4 between the February 28, 2011 and October 29, 2011. [*See* Dkt. 74 (Defendants' Proposed Findings of Fact and Conclusions of Law, proposing an award of damages "against Defendants").] Thus, the Court need only determine the extent of damages owed to the Plaintiffs.

Additionally, the IMWL requires every employer to "furnish each employee" with a statement of their hours worked during each pay period. Ind. Code 22-2-2-8(a). A failure to keep such records is an additional violation of the IMWL separate from the requirement to pay each employee pursuant to the payment requirements of section 4. Ind. Code 22-2-2-11(a). Although Mr. Furrer presents the Mr. Handyman billing records as "Labor Records," the billing records are an incomplete representation of Plaintiffs' hours worked, failing to account for morning calls and travel time between work sites and other work-related destinations. Although the GPS records paint a more complete picture, they are not

---

[2] The IMWL further specifies that an "employer," as defined in section 3, "shall not include any employer who is subject to the minimum wage provisions of the federal Fair Labor Standards Act." Although Plaintiffs initially brought claims under the FLSA, Defendants argued that they were not subject to the FLSA, and, when Plaintiff Furgason stipulated to the application of only the IMWL to his claims, the District Judge ruled that "any dispute regarding whether Mr. Handyman qualifies under the FLSA is now moot." [Dkt. 54 at 4.] Thus, for the purposes of Plaintiffs' claims now before the Court, Defendants are not "subject to" the FLSA, and the IMWL will properly be applied to the matter.

available for four of the months in question, and Mr. Furrer did not "furnish each employee" with the GPS records from their trucks, as required by section 8 of the IMWL. Thus, Defendants failed to keep adequate records of the hours worked by their employees.

With an admission of a section 4 violation, failure to compensate, in conjunction with a section 8 violation, failure to keep adequate records, the Plaintiffs must prove the extent of Defendants' damages against them by a preponderance of the evidence. *See, e.g.*, *Travelers Indem. Co. v. Armstrong*, 442 N.E.2d 349, 361 (Ind. 1982) ("'Preponderance of the evidence,' when used with respect to determining whether or not one's burden of proof has been met, simply means the "greater weight of the evidence"); *SJS Refractory Co., LLC v. Empire Refractory Sales, Inc.*, 952 N.E.2d 758, 766 (Ind. Ct. App. 2011). While Plaintiffs claim that they worked an average of 55 hours per week for the entire time period in question, Plaintiffs only provided the Court with two weeks' worth of GPS records for Plaintiff Furgason and about one month's worth of GPS records for Plaintiff Wharton for the relevant time period. With these GPS records provided, the Court was able to examine two weeks' worth of data (June 20, 2011 through June 24, 2011 and June 27, 2011 through July 1, 2011) for both Plaintiffs. By the Court's calculation, the average number of hours worked per day for those two overlapping weeks is 10.9 hours per day—11.1 hours for Plaintiff Furgason and 10.7 hours for Plaintiff Wharton.[3] These averages indicate that Plaintiffs' estimate of 55 hours of work per week is reasonable, assuming a five day work week. In response, Defendants offer no GPS evidence from other time periods to support their assertion that the billing records are an accurate representation of Plaintiffs' hours worked. Therefore, the greater weight of the evidence supports Plaintiffs' claims that they worked an average of 55 hours per week during the time period in question.

Accordingly, the Court makes the following calculations with regard to Plaintiff Furgason:

---

[3] To arrive at these numbers, the Court measured the time each Plaintiff first turned on his truck in the morning to the time each Plaintiff's work truck first arrived at his home address at night, subtracting any time spent at his home address during the day. For each day worked, an additional ten minutes was added for a phone call from Mr. Furrer, and an additional fifteen minutes was added for any at-home organizing and cleaning of the work truck.

- Plaintiff Furgason was incorrectly paid a $700 "salary" per week for the 35 weeks he worked for Mr. Handyman, as measured from February 28, 2011 through October 29, 2011
- On average, Plaintiff Furgason worked 55 hours per week (10 hours per week greater than the 45 hours per week his "salary" covered), 15 hours of which Plaintiff Furgason should have been paid 1.5 times the regular rate, pursuant to the IMWL
- The regular rate of pay will be calculated at $15.56 per hour ($700 divided by the 45 hours of work per week expected)
- The overtime rate of pay will be calculated at $23.33 per hour (1.5 times the regular rate of pay, as required by the IMWL)
- For the first five hours of overtime worked by Plaintiff Furgason per week (40 to 45 hours), Plaintiff Furgason is owed $7.77 per hour (the difference between the regular rate of pay and the overtime rate of pay)
- For the pay period of November 6, 2011 through November 12, 2011, Plaintiff Furgason was paid assuming 50 "regular" instead of 40 and is further owed ten hours' worth of payment at $7.50 per hour (the difference between the regular rate of pay at that time, $15.00, and the overtime rate of pay at that time, $22.50)
- In sum, Plaintiff Furgason is owed:
    - $1,359.75 (5 hours at $7.77 times 35 weeks) plus
    - $8165.50 (10 hours at $23.33 times 35 weeks) plus
    - $75.00 (10 hours at $7.50 in one week) for a total of
    - **$9600.25**

Additionally, the Court makes the following calculations with regard to Plaintiff Wharton:

- Plaintiff Wharton was incorrectly paid a $700 "salary" per week for the 15 weeks he worked for Mr. Handyman, as measured from April 10, 2011 through July 23, 2011

- On average, Plaintiff Wharton worked 55 hours per week (10 hours per week greater than the 45 hours per week his "salary" covered), 15 hours of which Plaintiff Wharton should have been paid 1.5 times the regular rate, pursuant to the IMWL
- The regular rate of pay will be calculated at $15.56 per hour ($700 divided by the 45 hours of work per week expected)
- The overtime rate of pay will be calculated at $23.33 per hour (1.5 times the regular rate of pay, as required by the IMWL)
- For the first five hours of overtime worked by Plaintiff Wharton per week (40 to 45 hours), Plaintiff Wharton is owed $7.77 per hour (the difference between the regular rate of pay and the overtime rate of pay)
- In sum, Plaintiff Wharton is owed:
    - $582.75 (5 hours at $7.77 times 15 weeks) plus
    - $3499.50 (10 hours at $23.33 times 15 weeks) for a total of
    - **$4082.25**

Further, according to section 9 of the IMWL, "[a]ny employer who violates the provisions of section 4 of this chapter shall be liable to the employee or employees affected in the amount of their unpaid minimum wages and in an equal additional amount as liquidated damages." Ind. Code 22-2-2-9. Because Plaintiffs additionally seek liquidated damages, the award to each Plaintiff will be twice the amount of unpaid minimum wages calculated above.

### IV. Conclusion

For the reasons set forth above in the Court's Findings of Fact and Conclusions of Law, the Court finds that the Defendants are jointly and severally liable to Plaintiff Furgason for unpaid overtime in the amount of $19,200.50, representing a compensatory damage award of $9,600.25 and a liquidated damages award of $9,600.25. Additionally, the Court finds that the Defendants are jointly and severally

liable to Plaintiff Wharton for unpaid overtime in the amount of $8,164.50, representing a compensatory damage award of $4,082.25 and a liquidated damages award of $4,082.25.

Date: 09/16/2014

_____
Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Robert Peter Kondras, Jr.
HUNT HASSLER LORENZ & KONDRAS LLP
kondras@huntlawfirm.net

Steven Sams
STEVEN SAMS, P.C.
stevensamslaw@att.net